IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2004

# JERMAINE IVORY and JAMES IVORY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2781     Steve Dozier, Judge**

_____

**No. M2003-02553-CCA-R3-PC Filed December 9, 2004**

_____

Defendant Jermaine Ivory was convicted by a jury of three charges involving the sale of cocaine. For these crimes, the trial court sentenced Jermaine Ivory to an effective sentence of thirty-six years in the Department of Correction. Codefendant James Ivory was convicted by the same jury of one of the same charges; James Ivory subsequently pled guilty to another cocaine offense, two marijuana offenses, and one count of felony possession of a firearm. For all of these offenses, James Ivory was sentenced to an effective sentence of twenty years in the Department of Correction. The consolidated direct appeal of these two Defendants was denied. See State v. James Lee Ivory, No. M2000-02145-CCA-R3-CD, 2003 WL 76980 (Tenn. Crim. App., Nashville, Jan. 10, 2003). Both Defendants subsequently filed for post-conviction relief. Jermaine Ivory alleged ineffective assistance of counsel in conjunction with his trial, claiming that his lawyer failed to adequately investigate his case, failed to adequately advise him about his case, and failed to investigate and/or pursue issues involving his mental health. James Ivory alleged that his trial counsel was ineffective at trial in failing to object to inadmissible evidence, and in failing to file a motion for new trial, thereby waiving a suppression issue. James Ivory also alleged that, due to his lawyer's ineffective assistance, his later guilty pleas were not knowing and voluntary. After a hearing, the trial court denied relief to both Defendants and this direct appeal followed. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Dwight E. Scott and Michael Colaveccio, Nashville, Tennessee, for the appellants, Jermaine Ivory and James Ivory.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Ryan Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

According to the opinion filed in the direct appeal of the Defendants' convictions, a confidential informant purchased cocaine from Defendant Jermaine Ivory at a residence in Nashville on two different occasions in the spring of 1998. A search of the residence was subsequently conducted on April 6, 1998. Following the seizure of evidence during this search, Defendant Jermaine Ivory was indicted on two counts involving the sale of cocaine and one count of conspiring to sell cocaine.[1] Defendant James Ivory was also indicted on the conspiracy charge. The Defendants were tried together on these counts and convicted by a jury as charged. Defendant James Ivory subsequently pled guilty to two other counts alleged against him in the indictment. Defendant James Ivory also pled guilty to two additional charges brought against him arising out of drug-related activities occurring in November 1998. These charges were brought pursuant to a criminal information rather than by indictment. These charges stemmed in part from a search conducted in November 1998.

Both Defendants now seek post-conviction relief on the basis of ineffective assistance of counsel. Defendant James Ivory further challenges the constitutionality of his guilty pleas.

## JERMAINE IVORY

Defendant Jermaine Ivory was represented at trial by his retained attorney, Mr. Dale Quillen. Jermaine Ivory's allegations of ineffective assistance of counsel consist of complaints about Mr. Quillen's investigation of the case, Mr. Quillen's investigation of his mental health, and the adequacy of Mr. Quillen's advice to him about the case. In support of his allegations, Jermaine Ivory initially testified at the post-conviction hearing that the only time he saw Mr. Quillen was in the courthouse after his arrest; that Mr. Quillen told him that the State "ain't got nothing on" him; that he told Mr. Quillen about his mental health "problems" and that he thought they should be investigated; and that he told Mr. Quillen that he wanted to testify. Jermaine Ivory acknowledged that Mr. Quillen interviewed the four witnesses that he suggested be contacted, but he did not know if Mr. Quillen interviewed the State's witnesses.

On cross-examination, Jermaine Ivory admitted that he had, in fact, met with Mr. Quillen several times prior to his arrest; that Mr. Quillen told him what charges were being brought against him and what the State would have to prove; that he told Mr. Quillen "everything" about the charges; and that Mr. Quillen conveyed a plea offer from the State for twelve years, to which he responded, "I ain't did nothing," and "Naw, I ain't gonna plead guilty to that." On questions by the court, Jermaine Ivory responded that Mr. Quillen brought to him in jail the State's audiotapes, where they listened to them. Jermaine Ivory asserted that Mr. Quillen never discussed the possible sentences he was facing, and that Mr. Quillen was supposed to "[p]rove [his] innocence . . . [a]nd he didn't do it."

---

[1]Defendant Jermaine Ivory was also indicted on other counts not relevant here.

Mr. Quillen also testified at the hearing. He explained that he visited the scene of the alleged crimes; hired an investigator to assist him in preparing for trial; spoke with all of the witnesses named to him by Jermaine Ivory; filed a motion to compel discovery; and discussed the facts of the case with the Defendant. Jermaine Ivory protested his innocence of the charged offenses throughout Mr. Quillen's representation of him. Mr. Quillen acknowledged that he knew that Jermaine Ivory had had some difficulties as a child, but "didn't see anything that would -- that [he] thought would've gotten [him] any place close to a finding that [the Defendant] was -- would've had a mental defense." While Mr. Quillen had no distinct recollection of explaining to Jermaine Ivory the range of punishments attendant upon the charged offenses, he stated that he was "sure [he] would have" discussed that topic with his client. Mr. Quillen also stated that he would have advised the Defendant not to testify, and did not recall Jermaine Ivory stating that he wanted to testify.

The trial court found that Mr. Quillen "discussed the elements of the offenses with [Jermaine Ivory] sufficiently to place the petitioner on notice of the charges against him"; that Mr. Quillen "diligently performed his task in regards to acquiring discovery and investigating the case"; and that Jermaine Ivory's proof regarding his alleged mental health problems was "unpersuasive," noting that Jermaine Ivory "did not introduce any documentation supporting his claim of mental health problems."[2] The trial court therefore found that Jermaine Ivory had "not demonstrated prejudice by his counsel's actions sufficient for relief under the post-conviction act."

**JAMES IVORY**
Defendant James Ivory was represented by Mr. Clark Shaw. James Ivory complains about Mr. Shaw's representation in conjunction with both his jury trial and his later guilty pleas. With respect to the jury trial — upon which James Ivory was convicted of conspiring to sell cocaine — James Ivory asserts that Mr. Shaw was deficient in failing to object to inadmissible photographs and in failing to file a motion for new trial, which would have preserved for appellate review the admissibility of evidence gathered in the April 1998 search. With respect to his guilty pleas, James Ivory alleges that his lawyer failed to reserve a certified question of law regarding the admissibility of evidence gathered during the November 1998 search, and that Mr. Shaw failed to explain to him that he had a right to have a grand jury review the charges brought against him pursuant to the criminal information. James Ivory also contends that his guilty pleas were involuntary and unknowing because of his minimal education and functional illiteracy.

At the post-conviction hearing, Mr. Shaw testified before James Ivory did. Mr. Shaw said that he explained James Ivory's guilty plea petition to him and thought that he explained things adequately. He did not know to what extent James Ivory could read and write, but assumed that his criminal defense clients were illiterate; he did not like to embarrass them by asking. Mr. Shaw stated that he did not know that James Ivory had been diagnosed as learning-disabled, but described James Ivory as an "intelligent human being" who never gave any indication of not understanding the proceedings. Mr. Shaw did not explain in detail the Defendant's right to have the Grand Jury indict

---

[2]Nor did Jermaine Ivory introduce any expert testimony about his alleged mental health problems. The only proof he submitted on this topic was his own testimony.

him on the charges in the criminal information to which he eventually pled guilty, but involved James Ivory in the decision to bypass that process in order to face a single trial instead of two. According to Mr. Shaw, when James Ivory decided to plead guilty to the charges raised in the information, the Defendant did not desire to reserve a certified question of law regarding whether the evidence obtained during the November 1998 search should have been suppressed. Mr. Shaw testified that, in retrospect, he should have reserved the question. With respect to an appeal of the jury verdict, Mr. Shaw testified that his client told him that he did not want to pursue an appeal. Although Mr. Shaw had already drafted a motion for new trial, he did not file it due to his client's instructions. James Ivory later changed his mind, but too late to file the motion. Accordingly, James Ivory was deemed by this Court on direct appeal to have waived any suppression issues he had with respect to the April 1998 search. See James Lee Ivory, 2003 WL 76980, at *5.

James Ivory testified that he went through seventh grade and that his reading and writing skills were "[n]ot that good." He introduced school records indicating that he was learning-disabled. He denied that he told Mr. Shaw that he did not want to appeal his jury verdict. He denied that Mr. Shaw explained his constitutional rights in conjunction with his guilty plea. On cross-examination, James Ivory asserted that his lawyer was lying during his testimony at the post-conviction hearing. With respect to his guilty pleas, he claimed that he just "signed some papers" and did not know that he was pleading guilty.

With respect to James Ivory's contentions regarding his attorney's failure at trial to object to allegedly inadmissible photographs, the trial court found that no prejudice accrued as a result of Mr. Shaw's allegedly deficient performance in this regard because the Codefendant's counsel objected, and the evidence was properly deemed admissible over the Codefendant's objection. As to Mr. Shaw's failure to file a motion for new trial raising as an issue the validity of the April 6 search, the trial court specifically "accredit[ed] the testimony of Attorney Shaw and [was] of the opinion that he was acting on directions from [James Ivory] not to appeal." The trial court also found that James Ivory had failed to demonstrate that his jury-verdict conviction might have been reversed on appeal on the ground that the evidence gathered during the April search should have been suppressed, even if Mr. Shaw had timely filed the motion. Codefendant Jermaine Ivory challenged this search in the direct appeal of his convictions, and this Court deemed this issue to be without merit. See James Lee Ivory, 2003 WL 76980, at *8.

With respect to James Ivory's contentions regarding his guilty plea, the trial court determined that he "knew the nature of his act in pleading guilty"; accredited Mr. Shaw's testimony in this regard; and was "of the opinion that [James Ivory] understood the ramifications of pleading guilty to these charges." The trial court further found that the Defendant waived his right to a grand jury proceeding in conjunction with his plea, that this matter was covered by the trial court during the plea, and that there was no ineffective assistance of counsel in this regard.

**STANDARD OF REVIEW**

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-

30-110(f); <u>Momon v. State</u>, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. <u>See</u> <u>Momon</u>, 18 S.W.3d at 156; <u>Henley v. State</u>, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. <u>See</u> <u>Momon</u>, 18 S.W.3d at 156; <u>Henley</u>, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999); <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Burns</u>, 6 S.W.3d at 461; <u>Baxter</u>, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. <u>See</u> <u>id.</u> at 687; <u>Burns</u>, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. <u>See</u> Tenn. Code Ann. § 40-30-110(f); <u>Burns</u>, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. <u>See</u> <u>Burns</u>, 6 S.W.3d at 461; <u>Goad v. State</u>, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59; <u>see</u> <u>also</u> <u>Hicks v. State</u>, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." <u>See</u> <u>Strickland</u>, 466 U.S. at 688; <u>Burns</u>, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Burns</u>, 6 S.W.3d at 462; <u>see</u> <u>also</u> <u>Strickland</u>, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, <u>see</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, <u>see</u> <u>Strickland</u>, 466 U.S. at 690; <u>Hicks v. State</u>, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

## ANALYSIS

### JERMAINE IVORY

In reviewing Jermaine Ivory's allegations of ineffective assistance of counsel and the proof adduced at the post-conviction hearing, we find no error by the trial court in denying relief. Jermaine Ivory has not demonstrated by clear and convincing evidence that Mr. Quillen failed to investigate his case adequately, or that Mr. Quillen could have established any viable theory of defense based upon Jermiane Ivory's mental health (or lack thereof). While the proof is less than overwhelming that Mr. Quillen explained to Jermaine Ivory the possible punishments he was facing on these charges, and while the trial court made no specific findings on this particular allegation, we find that the Defendant Jermaine Ivory has failed to prove by clear and convincing evidence that he was prejudiced by any alleged failure on his attorney's part in this regard. Mr. Quillen testified that Jermaine Ivory maintained his innocence throughout the proceedings. Jermaine Ivory testified that he refused to plead guilty, even after getting an offer from the State for twelve years. Jermaine Ivory did not testify that he would have pled guilty had he been better informed about the potential sentences he was facing upon a jury verdict of guilt; rather, he testified that his attorney failed him because he was supposed to "prove [his] innocence and he didn't do it." Jermaine Ivory's real complaint is with the jury that convicted him, not his lawyer. The Defendant having failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence, we affirm the trial court's denial of post-conviction relief to Jermaine Ivory.

### JAMES IVORY

Again, we find no error by the trial court in denying post-conviction relief to Defendant James Ivory. With respect to Mr. Shaw's failure to object at trial to allegedly inadmissible photographs, Mr. Shaw explained that he did not object because counsel for one of the codefendants did so. Moreover, this was an issue that could have been raised on direct appeal but was not because, according to the trial court's finding of fact, James Ivory told Mr. Shaw that he did not want to appeal his jury conviction. Accordingly, James Ivory has waived this particular complaint for the purposes of post-conviction relief. See Tenn. Code Ann. § 40-30-106(g). As to Mr. Shaw's failure to file a motion for new trial, the evidence does not preponderate against the trial court's finding that James Ivory was responsible for this decision, and James Ivory has therefore failed to demonstrate that Mr. Shaw's representation was deficient in this regard.

Similarly, the evidence does not preponderate against the trial judge's findings of fact with respect to James Ivory's allegations about his guilty pleas. Mr. Shaw testified that he fully explained

the pleas to James Ivory and that the Defendant gave no indication of not understanding what he was doing. The trial court accredited this testimony. Although the trial court made no specific finding with respect to James Ivory's allegations that his lawyer was deficient in failing to reserve a certified question of law in conjunction with one of his pleas, Mr. Shaw testified that James Ivory did not want to reserve the question of law. While Mr. Shaw testified that, in retrospect, he should have reserved the question, this Court does not second-guess strategic decisions with the benefit of hindsight. James Ivory's instruction to Mr. Shaw regarding the certified question was consistent with his instruction to not file a motion for new trial; he apparently wanted finality with respect to his convictions. The Defendant has failed to establish by clear and convincing proof that Mr. Shaw was deficient in failing to preserve a certified question of law, and he is therefore entitled to no relief on this ground.

## CONCLUSION

Neither Defendant has established by clear and convincing evidence that he suffered from the ineffective assistance of counsel at any relevant stage of the proceedings below. Accordingly, we affirm the judgments of the trial court denying relief to both Defendants.

_____

DAVID H. WELLES, JUDGE